# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| **STEVEY GUY FANNON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00045 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Sandra Romagnole, Assistant Regional Counsel, and Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Stevey Guy Fannon filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 1381-1383 (West 2012). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) (West 2011).

Fannon filed for benefits on October 1, 2008, alleging that he became disabled on January 15, 2008. His claim was denied initially and upon reconsideration. Fannon received a hearing before an administrative law judge ("ALJ"), during which Fannon, represented by counsel, and a vocational expert testified. The ALJ denied Fannon's claim, and the Social Security Administration Appeals Council denied his Request for Reconsideration. Fannon then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed and argued. The case is ripe for decision.

II

Fannon was born on September 7, 1957, making him an individual closely approaching advanced age under the regulations. 20 C.F.R. § 416.963 (2011). Fannon has an eighth grade education and has worked in the past as a carpenter, a concrete finisher, and a window replacer. He originally claimed he was disabled due to pain in his hands and hips.

Fannon sought treatment from G. Jane Williams, FNP, from January 2006 through December 2007. Fannon's complaints included insomnia, chest pain, hand pain, elbow pain, chronic back pain, chronic bronchitis, high cholesterol, and osteoarthritis of the hips. Williams prescribed Klonopin, Lortab, and Vytorin. She

reported that Fannon's neurological functioning was within normal limits and that he had an appropriate psychological status.

In January 2009, William Humphries, M.D., performed a consultative examination at the request of the state agency. Fannon complained of bilateral hand pain, left wrist pain, shortness of breath, and bilateral hip pain. He indicated that he had not undergone surgery or injection into the hand or hip regions. (R. at 285-86.) Dr. Humphries noted that Fannon was not taking any medication aside from Advil at the time of the examination. (R. at 286.) He reported that Fannon had "slight" to "mild" musculoskeletal deficiencies, full grip strength, clear lungs, and no neurological or emotional abnormalities. (R. at 287-88.) Dr. Humphries opined that Fannon was capable of performing a range of light work with some restrictions such as no repetitive production-type work, no crawling, and only occasional climbing and kneeling.

In March 2009, Fannon sought treatment from Charlene Grigsby, M.D., for complaints of sinus congestion and coughing. Fannon reported that he had not taken any medication for his nerves, cholesterol, or pain issues for the past three to four months. (R. at 299.) Upon examination, Dr. Grigsby noted clear lungs and normal psychological, neurological, and musculoskeletal functioning. She diagnosed Fannon with hand pain, hip joint pain, anxiety, acute sinusitis, and

esophageal reflux. Dr. Grigsby renewed Fannon's prescriptions, noting that Fannon's request for anxiety medication would be deferred. (R. at 301.)

There is no record of any follow-up visits with Dr. Grigsby over the next two years. However, Dr. Grigsby submitted a letter dated November 17, 2010, indicating that Fannon had been a patient "for quite some time." (R. at 318.) Dr. Grigsby noted that Fannon had considerable arthritis of the spine and several major joints, and that his impairments met Listings 1.02A and 1.02B, which pertain to major dysfunction of the joints.

In December 2010, Fannon underwent a series of X rays at Holston Valley Imaging Center. These X rays revealed mild superior joint space narrowing about the right hip, mild osseous proliferation in the left shoulder, mild to moderate osteoarthritis of the hands, and degenerative arthritis of the right elbow.

Elizabeth A. Jones, M.A., a senior psychological examiner, conducted a mental evaluation of Fannon in December 2010. Fannon denied any delusions, hallucinations, suicidal thoughts, or symptoms of depression, but stated that he did not like crowds. (R. at 375.) He also reported sleep difficulties that were most likely due to excessive caffeine and late meals. Jones noted that Fannon had no history of mental health treatment. She diagnosed Fannon with anxiety disorder

-4-

Case 2:11-cv-00045-JPJ-PMS   Document 18   Filed 05/15/12   Page 4 of 11   Pageid#: 434

and reading disorder, and assessed a GAF score of 70.[1] Jones opined that Fannon would have only mild limitations in his ability to interact with supervisors, co-workers, and the public.

At the administrative hearing held in March 2011, Fannon testified on his own behalf. Fannon confirmed that he did not require a wheelchair, walker, crutches, or any other type of assistive walking device. Donald Anderson, a vocational expert, also testified. He classified Fannon's past work as a carpenter as medium, skilled; and his past work as a concrete finisher as heavy, skilled.

After reviewing all of Fannon's records and taking into consideration the testimony at the hearing, the ALJ determined that he had severe impairments of degenerative joint disease of the hip, hands, feet, knees, and left wrist, chronic obstructive pulmonary disease with ongoing cigarette smoking, peripheral neuropathy in the right lower extremity, and a reading disability, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Fannon's limitations, the ALJ determined that Fannon retained the residual functional capacity to perform a range of light work that

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

Case 2:11-cv-00045-JPJ-PMS   Document 18   Filed 05/15/12   Page 5 of 11   Pageid#: 435

involved only occasionally balancing, kneeling, crouching, stooping/bending, climbing ramps/stairs, or operating foot controls with the lower extremities. The ALJ stated that Fannon could not crawl or climb ladders, ropes, or scaffolds, and that he was to avoid concentrated exposure to dust, fumes, odors, chemicals, gases, or hazards. The ALJ also restricted Fannon from work that required good reading skills or repetitive/continuous use of the hands in production-type work. The vocational expert testified that someone with Fannon's residual functional capacity could work as a collator operator, an advertising material distributor, or a bagger. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Fannon was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Fannon argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the medical opinion of Dr. Grigsby and failed to appropriately consider Fannon's mental impairments. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for

disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (West 2011).

In assessing SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th

Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Fannon argues that the ALJ's decision is not supported by substantial evidence. He presents two arguments.

First, Fannon argues that the ALJ failed to give proper weight to the opinion of Dr. Grigsby. Specifically, Fannon asserts that the ALJ failed to give proper weight to Dr. Grigsby's opinion that his osteoarthritis met the requirements of Listings 1.02A and 1.02B, which pertain to major joint dysfunction.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2) (2011). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of

-8-

Case 2:11-cv-00045-JPJ-PMS   Document 18   Filed 05/15/12   Page 8 of 11   Pageid#: 438

persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). When deciding the weight given to a treating physician's opinion, the ALJ considers factors such as the length and nature of the treating relationship. 20 C.F.R. § 416.927(d)(2).

In the present case, the ALJ considered the opinion of Dr. Grigsby but gave little weight to her assessment for several reasons. First, Dr. Grigsby's treating relationship with Fannon was limited — her opinion apparently was based on a one-time clinical examination and there are no records of any follow-up visits. Dr. Grigsby stated that her opinion was based on imaging studies; however, Fannon did not undergo X-ray studies until three weeks after Dr. Grigsby reached her conclusion. Second, Dr. Grigsby's opinion is inconsistent with her own evaluation as well as the other medical evidence of record. For instance, Dr. Grigsby stated that Fannon had considerable arthritis of the spine and several major joints; yet she noted normal musculoskeletal functioning upon evaluation. (R. at 300.) Dr. Grigsby's opinion is also refuted by the findings of Dr. Humphries, who noted only "slight" or "mild" functional deficiencies and concluded that Fannon was capable of performing a range of light work despite his musculoskeletal impairments. (R. at 287-88.) Furthermore, Fannon's conservative treatment history weighs against Dr. Grigsby's findings. *See* 20 C.F.R. § 416.929(c)(3) (2011).

Second, Fannon argues that the ALJ failed to appropriately consider his mental impairments. This argument has no merit. There is nothing in the record to indicate that the ALJ ignored or improperly discounted Fannon's mental impairments. The ALJ considered Fannon's anxiety disorder in detail, and substantial evidence supports the ALJ's conclusion that this impairment was not severe. (R. at 11-12.) For instance, Jones noted that Fannon denied any delusions, hallucinations, suicidal thoughts, or symptoms of depression, and that Fannon had no history of mental health treatment. (R. at 375.) Jones also assessed a GAF score of 70, indicating only mild functional limitations in mental work-related activities. Additionally, the ALJ accounted for Fannon's reading disorder in the residual functional capacity assessment, effectively limiting him to jobs that did not require good reading skills. Accordingly, I find that substantial evidence supports the ALJ's conclusions.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: May 15, 2012

/s/  James P. Jones
United States District Judge